IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-00096-SKC-KAS

MIKE VINCENT, and
KIM VINCENT,

    Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, *et al.*,

    Defendants.

## ORDER RE: SUMMARY JUDGMENT MOTIONS (DKTS. 66 & 68)

This case arises from Plaintiffs Mike and Kim Vincent's attempts to recover payments under their homeowner's insurance policy. Relevant here, they assert claims against their insurer, Defendant Certain Underwriters at Lloyd's London, Subscribing to Policy No. W3986519PNYH ("Defendants" or "Underwriters") for breach of contract, breach of the duty of good faith and fair dealing, and violations of Colo. Rev. Stat. §§ 10-3-1115 and -1116.[1] Before the Court are the parties' respective motions seeking either full or partial summary judgment. Defendants have filed a Motion for Summary Judgment seeking judgment in their favor on all claims for relief

---

[1] Plaintiffs assert a negligence claim against their insurance agents, who have also filed a Motion for Summary Judgment. Dkt. 70. The Court will address that Motion in a separate Order.

1

asserted by Plaintiffs. Dkt. 66. Plaintiffs have filed a Motion for Partial Summary Judgment seeking a finding that additional money is afforded them under their insurance policy despite the limits of liability stated in the declarations pages. Dkt. 68. Both motions are fully briefed.

The Court has carefully considered the parties' motions and respective briefing, their exhibit attachments, pertinent matters from the Court's own docket, and applicable law and legal authorities. No hearing is necessary. Because, when considering the undisputed material facts, no reasonable jury could conclude Defendants breached the insurance contract, Defendants' motion is GRANTED and Plaintiffs' motion is DENIED.

## UNDISPUTED MATERIAL FACTS

On November 21, 2019, Defendants issued Policy Number W3986519PNYH (the Policy), with effective dates of November 25, 2019, to November 25, 2020, to Plaintiffs as coverage for their residential property located in Grand Lake, Colorado. Dkt. 89 at ¶23. The property included a "two-story home atop a full walkout basement, a garage, and caretaker's quarters, in addition to landscaping and numerous outdoor features such as flagstone walkways, well, sewer lifting stations, propane tank, lighting, and other improvements, as well as personal property." Dkt. 4 at ¶11. The residence, however, was destroyed by the East Troublesome Fire in October of 2020. *Id.* at ¶19.

Pertinent here, the Policy's declaration pages include the following coverage information:

**8. Sum Insured: $957,500 per occurrence**

Sub-limits (part of and not in addition to the aggregate sum insured):

**SECTION I PROPERTY COVERAGE:**

| Coverage | | Amount | |
|---|---|---|---|
| Coverage A | Dwelling | $825,000 | per occurrence |
| Coverage B | Other Structures | $0 | per occurrence |
| Coverage C | Personal Property | $82,500 | per occurrence |
| Coverage D | Fair Rental Value | $50,000 | per occurrence |
| Coverage E | Additional Living Expense | $0 | per occurrence |

**SECTION II LIABILITY COVERAGE:**

| Coverage | | Amount | |
|---|---|---|---|
| Coverage L | Premises Liability | $500,000 | per occurrence |
| Coverage M | Medical Payments | $1,000 | per occurrence |

Dkt. 68-2 p.1. The Policy includes language specifically defining what types of claims can be made under Coverages A – E. *Id.* at pp. 373-74. It also has a section titled "Other Coverages," detailing miscellaneous other claims that can be made under the Policy, but which do not fall specifically under Coverages A – E. *See Id.* at pp. 374-77.

On October 26, 2020, Plaintiffs—via their insurance agent—submitted a property loss notice related to the fire damage. Dkt. 89 at ¶28. Following an inspection, Defendants paid Plaintiffs the full amounts listed under Coverages A, C, and D of the Policy. *Id.* at ¶¶39-44. Defendants also paid Plaintiffs an additional $41,250 for trees, shrubs, and other plants. *Id.* at ¶46. Plaintiffs seek an additional $379,000 in insurance benefits. *Id.* at ¶47.

3

**SUMMARY JUDGMENT STANDARD**

The purpose of summary judgment is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must identify material facts showing there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine" if a rational trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing this analysis, the factual record and any reasonable inferences from it are construed in the light most favorable to the nonmoving party. *Id.*

Moreover, when the Court is faced with cross-motions for summary judgment, the "filing of cross motions does not mean that the material facts are undisputed even if the parties focus on the same claim or defense." *In re Ribozyme Pharm., Inc. Secs. Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002). And denying one does not automatically require granting the other. Where, as here, the parties have filed cross-

4

motions for summary judgment (at least in part), the motions must be treated separately. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1147 (10th Cir. 2002) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

## ANALYSIS AND FINDINGS

All of Plaintiffs' claims against Underwriters are based on their contention that, despite having been paid the full "Sum Insured" amount as specified in the declaration pages, additional money is available to them under the "Other Coverages" sections of the Policy. These sections state that the various "Other Coverages" constitute "additional insurance." For example, subsection 1 of the "Other Coverages" provision provides:

> **1. Other Structures**
> 
> You may use up to 10% of the Coverage **A** limit of liability for loss by a Peril Insured Against to other structures described in Coverage **B**.
> 
> This coverage is additional insurance.

Dkt. 66-1 at p.374. Based on this language, Plaintiffs contend they are entitled to claim up to $82,500—10% of Coverage A's $825,000—beyond the $957,500 policy limits for damages done to structures other than the residential home. *See* Dkt. 68 at p.8. Plaintiffs argue similar phrasing in the "Improvements, Alterations And Additions," "Rental Value And Additional Living Expense," and "Ordinance or Law" sections also affords them additional money outside the "Sum Insured" limits. *Id*. And they rely on a debris removal endorsement which states that costs related to removal

5

of debris shall be *added* to the amount of damages to or destruction of property. *Id.* at 6.

In their Motion for Summary Judgment and their Response to Plaintiffs' competing Motion, Defendants contend the Policy is unambiguous and that payments pursuant to the "Other Coverages" provisions are not available where an insured has already been paid the full policy limits. The Court agrees with Defendants.

### A.   **Breach of Contract**

Under Colorado law, "[a]n insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). When interpreting a contract, the goal is to determine and effectuate the intent and reasonable expectations of the parties. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004). Absent any ambiguity in the Policy, the Court will not look beyond the four corners of the contract to determine the parties' intentions. *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).

To establish a claim for breach of contract, Colorado law requires the plaintiff to demonstrate "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Similarly, to establish a claim of statutory bad faith under Colo. Rev. Stat. § 10-13-1115, a plaintiff must establish that a benefit

to which he was entitled under an insurance policy was unreasonably delayed or denied. *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012). Here, Plaintiffs claim Underwriters breached the insurance contract by denying their claim for an additional $379,000 in insurance benefits.

To support their arguments in favor of additional payments, Plaintiffs primarily rely on the phrase "additional insurance" that appears in the "Other Coverages" subsections. Taken in insolation, "additional insurance" could suggest a claimant is entitled to money above the stated policy limit. However, the Court must "interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009) (cleaned up). The Court must not view clauses or phrases in isolation. *Id.* (quoting *U.S. Fidelity & Guar. Co. v. Budget Rent–A–Car Sys., Inc.*, 842 P.2d 208, 213 (Colo. 1992)).

The Court begins by considering the Policy's declaration pages, which are undisputedly part of the insurance contract. *Am. Fam. Mut. Ins. Co. v. Hansen*, 2016 CO 46, ¶ 23, 375 P.3d 115, 120 (Colo. 2016) (citing 16 Williston on Contracts § 49:25 (4th ed. 2016) ("The contents of a declarations sheet, or the declarations page, of an insurance policy is regarded as part of the insurance contract.")). Colorado law is also clear that a declaration page "defines the coverage available under the policy." *Id*. The declaration pages involved here state the limit of liability is $957,500, and that the specific subsets of coverage are "*part of and not in addition to*" the foregoing

7

aggregate sum. Dkt. 68-2 at p.1 (emphasis added). Plaintiffs' interpretation that more money is available runs contrary to this plain language.

The Court also concludes the specified dollar amounts assigned to Coverages A – E in the declaration pages weigh against Plaintiffs' position. Plaintiffs argue the "Other Structures," "Improvements, Alterations And Additions," "Rental Value And Additional Living Expense," and "Ordinance or Law" provisions provide clearly defined and predetermined amounts of additional insurance. Specifically, they contend they are entitled to use up to $82,500 for other structures (10% of Coverage A), $82,500 for improvements, alterations and additions (10% of Coverage C), $165,000 for rental value and additional living expenses (20% of Coverage A), and $82,500 (10% of Coverage A) for costs incurred due to the enforcement of ordinances or laws. But if these amounts were in fact predetermined as Plaintiffs theorize, it would stand to reason that they would be listed along with the other defined sub-limits. But they are not, which instead supports Defendants' position that any payment pursuant to these "Other Coverages" is contingent on unused funds remaining within the Coverage A – E sub-limits. *See DA Mountain Rentals, LLC v. The Lodge at Lionshead Phase III Condo. Ass'n Inc.*, 409 P.3d 564, 571 (Colo. App. 2016) (discussing application of the rule of *expressio unius exclusio alterius* to contract interpretation).

The fact that the Policy refers to these "Other Coverages" as "additional insurance" does not change the Court's conclusion or render the contract ambiguous.

8

Rather, it is clear the language "additional insurance" means that a remaining balance from one sub-limit can be used to supplement the limits in other sections, thus providing additional insurance up to the Policy limit. For example, the Policy limits recovery for "Fair Rental Value" to $50,000, but assuming any money remained with respect to Coverage A, Plaintiffs could use up to $165,000 as additional insurance for fair rental values. Similarly, although Plaintiffs did not have predefined coverage for damage to "Other Structures," if Coverage A had any unused funds, Plaintiffs could nevertheless apply up to $82,500 for these buildings. This interpretation harmonizes the language of the Policy as a whole and does not render any part meaningless, whereas Plaintiffs' interpretation is inconsistent with the declaration pages statement that recovery is limited to $957,500.

The Court's conclusion is further buttressed by the Policy's "Conditions" section, which states:

> **B. Insurable Interest And Limit Of Liability**
>
> Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:
>
> **1.** For an amount greater than the interest of a person insured under this policy at the time of loss; or
>
> **2.** For more than the applicable limit of liability.

Dkt. 66-1 at p.381. Likewise, the debris removal endorsement states that it will provide payments for removal, but only "within the Sum insured." *Id*. at p.390. If the Court were to accept Plaintiffs' interpretation of the Policy, it would directly

9

contradict the foregoing limiting language and run afoul of the rules of contract interpretation.

Construing the insurance contract as a whole, the Court concludes it does not provide for payments above the Policy's $957,500 limits of liability. Thus, there is no genuine dispute of material fact as to whether Defendants breached the insurance contract when they refused to pay an additional $379,000 in insurance benefits above and beyond the "Sum Insured." Defendants are entitled to judgment in their favor on Plaintiffs' breach of contract claim.

**B.     Statutory and Common Law Bad Faith Claims**

Because there is no disputed question of material fact as to whether Defendants breached the insurance contract, Defendants are also entitled to judgment on Plaintiffs' claims for breach of the duty of good faith and fair dealing as well as their claims under Colo. Rev. Stat. §§ 10-3-1115 and -1116. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage.").

*     *     *

For the reasons shared above, IT IS ORDERED:

1.  Defendants' Motion for Summary Judgment is GRANTED and the claims against them are dismissed;

10

    2.    Plaintiffs' Motion for Partial Summary Judgment is DENIED; and

    3.    The Court finds as MOOT the Parties' competing motions (Dkts. 55, 56) to exclude experts.

SO ORDERED.

DATED:   January 31, 2025

                              BY THE COURT:

                              S. Kato Crews
                              United States District Judge