IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-00096-SKC-KAS

MIKE VINCENT and
KIM VINCENT,

     Plaintiffs,

V.

CERTAIN UNDERWRITERS AT LLOYDS, LONDON, *et al.*,

     Defendants.

---

**ORDER RE: DEFENDANTS ELG INSURANCE SERVICES, LLC, MICHAEL MAJOR AND BRANDON LOPEZ'S JOINT MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**
**(DKT. 70)**

---

     Plaintiffs Mike and Kim Vincent brought the present action to recover losses related to the destruction of their home in Grand Lake, Colorado. Relevant here, they assert a claim of negligence against their insurance agents ELG Insurance Services, LLC ("ELG"), Michael Major, and Brandon Lopez (collectively "Defendants").[1] Before the Court is Defendants' request for full or, in the alternative, partial summary judgment ("Motion"). Dkt. 70. The Court has carefully considered the Motion and

---

[1] Plaintiffs also asserted claims against Certain Underwriters at Lloyd's of London, their insurance company. The Court granted Underwriters request for summary judgment in a separate order. Dkt. 93.

1

respective briefing, the Parties' exhibit attachments, pertinent matters from the Court's own docket, and the applicable law and legal authorities. No hearing is necessary. Because, when considering the undisputed material facts, no reasonable jury could conclude Defendants were negligent, their Motion is GRANTED.

## UNDISPUTED MATERIAL FACTS

In 2015, Plaintiffs purchased a residential property in Grand Lake, Colorado that served as their primary residence, business office, and a short-term rental ("the Property"). Dkt. 92 at ¶¶1-2. Prior to the events underlying this action, Plaintiffs purchased insurance polices for the Property with dwelling limits of $714,000, $724,000, and $742,000 for the years 2016, 2017, and 2018, respectively. *Id*. at ¶¶3,5.

In October 2019, Plaintiffs contacted ELG and spoke with Lopez regarding their insurance needs for both the Property and another Grand Lake residence that is not subject to the current dispute. *Id*. at ¶9. Plaintiffs had not previously worked with ELG, Lopez, or Major regarding insuring their properties. *Id*. at ¶10. According to Defendants' evidence, which Plaintiffs have failed to rebut, Plaintiffs expressed interest in acquiring a policy for the Property with dwelling limits of $825,000.[2]

---

[2] Defendants submitted sworn deposition testimony from Lopez and Major regarding Lopez's initial communications with Plaintiffs wherein both attest Plaintiffs requested dwelling limits of $825,000. Dkt. 70-1 at ECF pp. 25, 35-37. In response, Plaintiffs submitted an email from Mike Vincent to ELG offering clarifications regarding the Property and posing several questions. Dkt. 85-9. But at no point in the email is the desired limit of liability discussed, and Plaintiffs have offered no other competent evidence on the point. Therefore, this fact is undisputed.

Based on his conversation with Mr. Vincent, Lopez prepared an insurance application and solicited various admitted insurance companies; however, all the admitted insurers declined coverage.[3] *Id.* at ¶¶12-13. Thereafter, ELG used a wholesale broker to solicit non-admitted insurers regarding Plaintiffs' insurance needs. *Id.* at ¶14. Defendant Certain Underwriters at Lloyd's of London ("Underwriters") offered to insure the Property with a dwelling limit of $825,000. *Id.* at ¶15. ELG then asked Plaintiffs to review and make any necessary revisions to the information regarding the Property "to make sure [they got] the limit of insurance correct" in case of a total loss.[4] *Id.* at ¶¶17-18. ELG also provided Plaintiffs with a pamphlet explaining the concept of coinsurance.[5]

Based on the revised information from Plaintiffs, ELG generated a replacement cost estimate for the Property of $975,000 and then solicited non-

---

[3] "Admitted" insurance companies must meet state regulations and requirements. "Non-admitted" do not have to meet the same requirements but are often more willing to provide coverage for high-risk properties. *See* Toolkit for Homeowners and HOAs on Insurance, Colorado Division of Insurance, https://doi.colorado.gov/homeowners-hoainsurancetoolkit (last visited January 30, 2025).

[4] The Parties, at times, dispute whether a particular communication came from Major or Lopez. However, there is no question that both Major and Lopez were, at all times relevant to this dispute, communicating within the scope of their employment and on behalf of ELG. Thus, the Court does not quibble—and concludes it makes no material difference to the ultimate outcome—over which individual defendant spoke with or emailed Plaintiffs. For simplicity, the Court refers to communications as being from ELG.

[5] Plaintiffs contend this pamphlet was inadequate in its explanation. But they do not dispute receiving the pamphlet and apparently Mr. Vincent did not tell ELG that he did not understand the concept of coinsurance. Dkt. 92 at ¶19.

admitted insurers regarding their interest in providing a policy with such dwelling limits. *Id.* at ¶¶20, 22. Underwriters again offered an insurance policy at the requested limit, which ELG provided to Plaintiffs. *Id.* at ¶¶22, 23. Plaintiffs ultimately decided to purchase the policy with dwelling coverage limits of $825,000. *Id.* at ¶24. Thereafter, in January 2020, Underwriters had the Property inspected and estimated that the rebuild cost for the Property was $991,000. *Id.* at ¶¶25, 26. Although Underwriters would have increased the dwelling coverage limits based on the inspection's findings, Plaintiffs did not request any changes to their policy. *Id.* at ¶¶30, 31.

In October 2020, the East Troublesome Fire destroyed the Property. *Id.* at ¶34. After Plaintiffs filed an insurance claim, Underwriters paid them the full policy limits and an additional $41,250 for trees, shrubs, and other plants. *See* Dkt. 93 at p.3. In addition to seeking additional payments from Underwriters, Plaintiffs seek monetary damages from Defendants for their alleged negligence in procuring the insurance policy. Dkt. 4 at ¶¶121-34.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "responsibility of informing the district court of the basis for its motion, and

4

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must identify material facts showing there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine" if a rational trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing this analysis, the factual record and any reasonable inferences from it are construed in the light most favorable to the nonmoving party. *Id.*

## ANALYSIS AND FINDINGS

Plaintiffs' claim of negligence is based on their contention they had a special relationship with Defendants, who allegedly failed to appropriately advise Plaintiffs and procure sufficient coverage to rebuild the Property in the event of a total loss. Dkt. 4 at pp.121-34. In their Motion, Defendants contend that based on the undisputed evidence, no jury could reasonably conclude they developed a special relationship with Plaintiffs or that they were negligent in procuring Plaintiffs' insurance policy.[6] The Court agrees with Defendants.

---

[6] Defendants also contend, in the alternative, they are entitled to partial summary judgment because Plaintiffs have failed to disclose expert testimony regarding the proximate cause of damages. Given the Court's conclusions regarding their first

5

**A.     Negligence**

To establish a claim of negligence, a plaintiff must show (1) a duty or obligation requiring the defendant to conform to a specific standard of care; (2) a breach of the duty by the defendant; (3) a sufficient causal nexus between the defendant's breach and the plaintiff's injury; and (4) actual damages to the plaintiff's interest. *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 242 (Colo. 1987).[7] Under Colorado law, "[t]he general duty of the insurer's agent to the insured is to refrain from affirmative fraud, not to watch out for all rights of the insured and inform the latter of them." *Kaercher v. Sater*, 155 P.3d 437, 441 (Colo. App. 2006) (quoting *Estate of Hill v. Allstate Ins. Co.*, 354 F.Supp.2d 1192, 1197 (D. Colo. 2004), and 4 *Couch on Insurance* § 55:5 (3d ed.)).

Consistent with these legal principles, absent a special relationship, insurance agents and companies do not "have a common law duty to ensure complete protection to the policyholder or to recommend higher policy limits, but only [have] a duty to exercise a reasonable duty of care." *Apodaca v. Allstate Ins. Co.*, 232 P.3d 253, 259 (Colo. App. 2009), *aff'd*, 255 P.3d 1099 (Colo. 2011); *see also Kaercher*, 155 P.3d at 441 ("No duty to give advice is created simply because the insurance intermediary becomes a person's agent. This applies both to advice about what policies should be

---

argument, it need not address the purported lack of experts or Defendants' pending motions regarding expert testimony.

[7] Federal courts sitting in diversity apply the substantive law of the forum state. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).

purchased as well as advice about what coverage is contained in an insureds existing policy."). "An insurance agent who agrees to obtain a particular form of insurance coverage has a duty to obtain such coverage or to notify the person seeking coverage of his failure or inability to do so." *Valley Equip. Leasing, Inc. v. McGriff, Seibels & Williams of Oregon, Inc.*, No. 14-cv-02383-CMA-NYW, 2016 WL 1697861, at *4 (D. Colo. Apr. 28, 2016).

The undisputed facts in this case are clear. Plaintiffs contacted Defendants seeking an insurance policy with dwelling limits of $825,000. Defendants solicited various companies and ultimately presented Plaintiffs with proposed insurance policies with dwelling limits of $825,000 and $975,000. Plaintiffs specifically directed Defendants to procure the policy with the lower limit, which they did. Consequently, absent a finding of a special relationship, which the Court turns to next, no reasonable jury could conclude Defendants were negligent in procuring Plaintiffs' insurance policy.

**B.    Special Relationship**

Plaintiffs contend there is a genuine dispute as to whether a special relationship existed between the parties. The Court disagrees. "Whether a special relationship has been formed turns on whether there is 'entrustment,' that is, whether the agent or broker assumes additional responsibilities beyond those which attach to an ordinary, reasonable agent possessing normal competencies and skills."

*Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1171 (10th Cir. 2008) (citing *Kaercher v. Sater*, 155 P.3d 437, 441 (Colo. App. 2006)).

Plaintiffs first contend Defendants exercised a special level of discretion because Defendants submitted the initial application for insurance without first obtaining Plaintiffs' signatures. Dkt. 85 at p.8. This conduct, however, is distinguishable from cases where an insurance agent exercised a level of discretion or authority such that it formed a special relationship between the parties. In those cases, the agents "customarily took care of a customer's insurance needs without consulting the insured and *without further express orders from the insured.*" *Richardson v. Amica Mut. Ins. Co.*, 693 F. Supp. 3d 1182, 1187 (D. Colo. 2023) (emphasis added) (discussing *Estate of Hill v. Allstate Ins. Co.*, 354 F. Supp. 2d 1192 (D. Colo. 2004*)); see also Construction Planners, Inc. v. Dobax Ins. Agency, Inc.*, 583 N.E.2d 255, 257 (Mass. App. Ct. 1991) (a jury could find prior dealings giving rise to a duty where plaintiff had relied on defendant for several years to meet its varied insurance needs, and defendant often renewed the policies automatically without consulting plaintiff); *Barnett v. Security Ins. Co. of Hartford*, 352 S.E.2d 855, 857 (N.C. Ct. App. 1987) (a jury could find prior dealings giving rise to a duty where defendant automatically renewed plaintiffs' multiple insurance policies when they expired over a period of three and a half years).

Here, it is undisputed that this initial application was not binding on Plaintiffs. And more importantly, when that application resulted in two options for coverage,

8

Plaintiffs made the ultimate decision regarding which insurance policy they wanted. Plaintiffs have not cited any cases where an agent's act of submitting an initial insurance application that lacked the insured's signature was found to establish a special duty, and this Court is aware of none.

Plaintiffs next contend the Defendants incurred a special duty because they provided Plaintiffs with additional counseling—upon which they relied—that went beyond a traditional agent and insured relationship. Specifically, Plaintiffs state Defendants (1) provided advice regarding insurance for short-term rentals and "insurance [] value for properties;" (2) assisted with claims handling; and (3) offered coverage opinions for lost rental income due to COVID-19. Dkt. 85 at pp.9-11.[8]

There are several problems with these arguments. Chief among them is that Plaintiff cites no evidence in the record, nor even to the statement of facts, to support these allegations. The Court will not root through the record in search of evidence to support any factual assertions. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir.1995) ("Without a specific reference, [courts] will not search the record in an effort to determine whether there exists dormant evidence."). And Plaintiffs again fail to cite any authority supporting their arguments that Defendants' purported "additional counseling" warrants finding a special relationship.

---

[8] Plaintiffs also insist they did not understand the concept of coinsurance; however, it is undisputed they were provided with a pamphlet explaining coinsurance. Dkt. 92 at ¶19. There is no evidence they expressed any confusion or concern to Defendants after receiving the pamphlet.

9

To be sure, the results of this Court's research directly contradict Plaintiffs' arguments. Colorado courts have consistently concluded that even "when an agent represents that he or she is knowledgeable about insurance coverages, and regularly in the course of his or her business, informs, counsels, and advises customers about their insurance needs," the agent has not triggered a special relationship or assumed a heightened duty of care to the insured. *Apodaca*, 232 P.3d at 259. Plaintiffs' allegations regarding Defendants' counseling efforts are indistinguishable from facts Colorado courts have previously deemed insufficient to trigger a "special relationship."

Finally, Plaintiffs assert—again without directing this Court to record citations—they paid Defendants "additional fees which were incremental to [Defendants'] traditional earned commissions." Dkt. 85 at p.11. This argument is inapposite for two reasons. First, cases discussing payment of additional fees do so in the context of an agent providing additional personalized risk-management services and expert advice. *See Parker v. State Farm Mut. Auto. Ins. Co.*, 630 N.E.2d 567, 570 (Ind. Ct. App. 1994) (articulating the kinds of factors required to establish a special relationship of entrustment including "receiving compensation, above the customary premium paid, for expert advice provided"); *Tackes v. Milwaukee Carpenters Dist. Council Health Fund*, 476 N.W.2d 311 (Wis. Ct. App. 1991) (no additional duty where there was no long-standing relationship of entrustment and agent did not receive any compensation for insurance consulting work other than the commissions he received

10

from premiums). Plaintiffs have not cited any evidence that these purported additional fees were compensation for personalized expert advice beyond the advice ordinarily provided by an insurance agent to their client.

Second, the evidence is in fact undisputed that Defendants were only paid their 10% commission. Dkts. 92-1, -2. The additional amounts on the invoice include the wholesale broker's fee, an inspection fee, and taxes. *Id*. Thus, the Court concludes that no reasonable jury could find a special relationship on this basis. *See Sewell*, 535 F.3d at 1171 (no special relationship where, among other factors, the plaintiff did not pay more for a detailed needs analysis or for personal risk-management services).

\* \* \*

Because there are no disputed questions as to whether there was a special relationship between Defendants and Plaintiffs requiring a heightened duty of care, Defendants are entitled to judgment on Plaintiffs' negligence claims as a matter of law. It is, therefore, ORDERED:

1. Defendants' Motion for Summary Judgment is GRANTED and the claims against them are dismissed;

2. The Court finds as MOOT Defendants' motions (Dkts. 53, 54) to exclude or limit Plaintiffs' experts.

SO ORDERED.

DATED:   January 31, 2025

BY THE COURT:

_S. Kato Crews_____
S. Kato Crews
United States District Judge

12